1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10   ROBERT E. SPRING,                 )   Case No. ED CV 11-1804-PJW
                                       )
11                  Plaintiff,         )
                                       )   MEMORANDUM OPINION AND ORDER
12          v.                         )
                                       )
13   MICHAEL J. ASTRUE,                )
     Commissioner of the              )
14   Social Security Administration,   )
                                       )
15                  Defendant.         )
     _____)

16

17                        I. INTRODUCTION

18        Before the Court is Plaintiff's appeal of a decision by Defendant

19   Social Security Administration ("the Agency"), denying his application

20   for Disability Insurance benefits ("DIB").  Plaintiff claims that the

21   Administrative Law Judge ("ALJ") erred when he found that Plaintiff

22   was not credible and when he rejected the opinions of a treating and

23   an examining doctor.  For the reasons explained below, the Court

24   concludes that the ALJ erred and remands the case to the Agency for

25   further consideration.

26                    II. SUMMARY OF PROCEEDINGS

27        On December 13, 2005, Plaintiff applied for DIB, claiming that he

28   had been unable to work since October 27, 2004, due to a heart attack,

high blood pressure, cholesterol, and arterial stenosis.
(Administrative Record ("AR") 147, 174.)  The Agency denied the
application initially and on reconsideration.  (AR 35-36, 48-58.)
Plaintiff then requested and was granted a hearing before an ALJ.  (AR
60-62.)  On March 25, 2008, Plaintiff appeared with counsel and
testified at the hearing.  (AR 796-827.)  On April 25, 2008, the ALJ
issued a decision denying benefits.  (AR 37-45.)

Plaintiff appealed to the Appeals Council, which remanded the
case to the ALJ with instructions to clarify his treatment of the
treating and examining physicians' opinions and his finding that
Plaintiff was not credible.  (AR 82-85.)  On November 10, 2009, the
ALJ held a second hearing.  (AR 26-34.)  At the outset of the hearing,
Plaintiff's counsel requested that Plaintiff's claim be amended to
seek disability benefits for a closed period from October 27, 2004 to
September 1, 2008, due to the fact that Plaintiff had returned to the
work force.  (AR 29.)  On January 6, 2010, the ALJ issued a second
decision, again denying Plaintiff's application for benefits.  (AR 10-
20.)  Plaintiff appealed to the Appeals Council, which denied review.
(AR 1-9.)  He then commenced this action.

III. DISCUSSION

1.   The ALJ's Credibility Evaluation

Plaintiff contends that the ALJ's credibility determination is
not supported by substantial evidence.  (Joint Stip. at 18-20.)  For
the following reasons, the Court agrees.

ALJs are tasked with judging the credibility of witnesses.  In
making these determinations, they may employ ordinary credibility
evaluation techniques.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.
1996).  Where a claimant has produced objective medical evidence of an

2

impairment which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, the ALJ can only reject the claimant's testimony for specific, clear, and convincing reasons that are supported by substantial evidence in the record. *Id.* at 1283-84; *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Plaintiff testified at the first hearing in March 2008 that he was unable to work for more than three or four hours a day because of aches and pain. (AR 802.) He testified that the pain was particularly bad in his hands, shoulders, and feet. (AR 813.) He also testified that he thought that some of the medication he was taking--amounting to 25 to 30 pills a day--might be making his symptoms worse. (AR 802, 813-14.) Plaintiff explained that his back hurt if he sat too long and that his shoulders and feet hurt if he stood for more than an hour. (AR 816.) He explained that, on a good day, it took him an hour to get out of bed and, on a bad day, it took him two hours. (AR 818.) In a written statement submitted with his disability application, Plaintiff noted that he experienced swelling in his hands, legs, and feet and that he often fell asleep when he sat down to work on his computer or to read a book. (AR 182.) He also complained that he had trouble walking a block or more because his whole body hurt and he had trouble breathing. (AR 191.)

The ALJ found that there was no objective evidence to support Plaintiff's claimed limitations. (AR 18-19.) He noted, for example, that Plaintiff's claims of an inflammatory condition were not supported by evidence of swelling in the joints, arms, or legs. (AR 19.) He also pointed out that Plaintiff's "motion remained intact," his pain responded to treatment, and his activities were "self limited." (AR 19.) He noted that Plaintiff's uric acid levels were

3

1    no higher than normal for more than 12 months and that there was no
2    nerve root impingement.  (AR 19.)

3         The record does not seem to support any of these findings.  Dr.
4    Glen Smith, Plaintiff's treating physician, noted swelling in
5    Plaintiff's hands, legs, and feet on a number of occasions.  (AR 318
6    (hand); 322 (legs/feet), 453 (hands).)  So did Dr. Robert Steinberg,
7    who examined Plaintiff in December 2007.  (AR 444 (noting edema in
8    joints).)  Dr. Steinberg also observed that Plaintiff's range of
9    motion was diminished in his shoulders, elbows, wrists, hands, hips,
10   knees, ankles, and toes.  (AR 444-46.)  Rheumatologist Joo-Hyung Lee
11   noted that Plaintiff's pain was "suggestive of an inflammatory
12   arthritis," though Plaintiff did not exhibit any swelling on the day
13   Dr. Lee examined him.  (AR 272.)

14        The ALJ's finding that Plaintiff's pain responded to treatment is
15   a one-sided interpretation of the evidence.  Although Plaintiff
16   testified that, if he did *not* take pain pills, he found it hard to
17   function, he also testified that the pain "just continues to get
18   worse."  (AR 814.)  Clearly, the pills afforded him some relief, but,
19   nevertheless, he repeatedly emphasized that he continued to experience
20   pain, so much so that, at times, he felt "like somebody [was] taking a
21   nail through me."  (AR 33, 816-17.)  Likewise, the ALJ did not set
22   forth a basis for his finding that Plaintiff's activities were "self
23   limited."  (AR 19.)  Thus, the Court cannot evaluate that finding,
24   either.

25        As to Plaintiff's uric acid levels, the ALJ did not explain what
26   impact they had on Plaintiff's condition and how the absence of high
27   uric acid levels for 12 months undermined Plaintiff's testimony
28   regarding his symptoms.  Thus, the Court is not able to evaluate the

4

ALJ's finding regarding the uric acid level.  Further, because the ALJ had already found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms (AR 18), the fact that Plaintiff lacked other signs of impairment was not a proper basis for disbelieving his testimony.

Another reason cited by the ALJ for questioning Plaintiff's testimony was that Plaintiff continued to work out of his house for a time in 2007 and 2008--while he was disabled--and attended a life insurance seminar during this period.  (AR 18-19.)  This rationale, too, is rejected.

Plaintiff testified that his work involved making phone calls from his home for 30 minutes a day, two or three days a week, and attending a meeting once every two weeks.  (AR 800-01.)  The work required him to sit for no more than one hour at a time.  (AR 206.)  Plaintiff's ability to perform at this level does not show that he was capable of working 40 hours a week or that his claim that he could not work full time was untrue.

The ALJ also focused on the fact that Plaintiff had returned to the work force in September 2008, despite there being no evidence that his condition had improved, thus implying that he had been capable of working all along.  The Court does not find this evidence convincing, either.  Plaintiff testified that his job in 2008 came from a former employer who allowed Plaintiff to work mainly out of his home with only occasional trips to the employer's stores to check on them.  (AR 30.)  Plaintiff testified that he could "roll into" work "whenever" and that his employer would not know if he fell asleep at his computer, which sometimes happened.  (AR 30, 32.)  He also testified that he would probably not be able to work if he had to go to an

5

1   office or drive on the freeway.  (AR 32.)  Thus, there is simply
2   nothing in this testimony to suggest that Plaintiff was capable of
3   full-time work outside the home or that his earlier testimony that he
4   could not work full time outside the home was false.

5       As for the life insurance seminar that Plaintiff attended, it is
6   not clear from the record when the seminar took place or what it
7   entailed.  As such, the Court does not find this reason for
8   discounting Plaintiff's testimony convincing.

9       Finally, the ALJ found that Plaintiff was not credible because he
10  was only taking Excedrin for his joint pain, despite his claim that
11  muscle aches and pain were the main reasons that he could not work.
12  (AR 19.)  This finding is contradicted by the record.  The medical
13  records show that--consistent with Plaintiff's testimony at the
14  hearing--throughout the period in question, he was taking Tramadol, a
15  prescription pain reliever prescribed for moderate to moderately
16  severe chronic pain for adults who require around-the-clock treatment
17  for an extended period of time.[1]  (AR 179, 196, 201, 235, 820.)  Thus,
18  the ALJ's finding that Plaintiff was only taking Excedrin is not
19  supported by the record and is not a valid reason for questioning
20  Plaintiff's credibility.

21      Because the ALJ's reasons for rejecting Plaintiff's testimony are
22  not clear and convincing and/or are not supported by substantial
23  evidence in the record, remand is required on the credibility issue.

24
25
26
27
───────────────
28      [1] *See* The Physician's Desk Reference Pocket Guide to
    Prescription Drugs at www.pdr.net/drug-summary/ultram.

6

1        2.   <u>The Treating and Examining Doctors' Opinions</u>

2        Plaintiff contends that the ALJ erred in discounting the opinions

3   of treating physician Glen Smith and medical examiner Robert

4   Steinberg.  (Joint Stip. at 8-12.)  Were this the only issue on

5   appeal, the Court would likely affirm the ALJ's findings with regard

6   to these doctors.  But it is not.  And it is obvious from the ALJ's

7   decision that he based his findings to some degree on the fact that

8   these doctors relied, in large measure, on Plaintiff's subjective

9   complaints, which the ALJ found were not credible.  (AR 16-18.)  The

10  problem the Court has in addressing this issue is that it is not clear

11  how much the ALJ relied on the credibility finding in reaching his

12  decision to reject the doctors' opinions.  Thus, the Court cannot say

13  with any certainty whether the ALJ would have reached the same

14  decision had he found Plaintiff's testimony credible.  For this

15  reason, the Court remands this issue as well.  *See Carmickle v.*

16  *Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (explaining, where valid

17  and invalid reasons are relied on by ALJ in resolving issue, court's

18  job is to determine whether outcome would have been the same had ALJ

19  not considered invalid reasons).  After reconsidering the credibility

20  issue, the ALJ should address the doctors' opinions if necessary.

21                      IV. CONCLUSION

22       For these reasons, the Agency's decision is reversed and the case

23  is remanded for further proceedings consistent with this memorandum

24  opinion and order.

25       IT IS SO ORDERED.

26       DATED: March 26, 2013

27       _____

28       PATRICK J. WALSH
         UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\SPRING, 1804\Memo_Opinion.wpd

7